WILLIAM B. PICKETT, AS TAX ASSESSOR IN AND FOR DUVAL COUNTY, APPELLANT, VS. G. W. RUSSELL, APPELLEE.

(The following dissenting opinion was inadvertently omitted from its proper place; it should have followed the opinion of the court on page 141.—Reporter.)

TAYLOR, C. J., dissenting:

I am unable to concur in the conclusion reached by the majority of the court upon the main questions at issue in this case, and think that the order appealed from should be affirmed.

I think that Chapter 4336 laws, approved May 20, 1895, under which the election was held that is questioned in this case, besides being so crude and imperfect within itself as to make it impossible under it constitutionally to impose any tax whatever, is unconstutional and void upon its face, in that it violates not only the spirit but the letter of section 10 of Article XII of the constitution of 1885. This section of the organic law reads as follows: "The legislature may provide for the division of any county or counties into convenient school districts, and for the election biennially of three school trustees, who shall hold their office for two years, and who shall have the supervision of all the schools within the district; and for the levying and collection of a district school tax, for the exclusive use of public free schools within the district, whenever a majority of the qualified electors thereof that pay a tax on real or personal property shall vote in favor of such levy;

*provided*, that any tax authorized by this section shall not exceed three mills on the dollar in any one year on the taxable property of the district."

Chapter 4336 laws, approved May 20th, 1895, designed to carry into effect the above quoted constitutional provision, and under which the election in question was held, is as follows:

## Chapter 4336.

An Act to Provide for the Division of Counties into Convenient School Sub-district, and for the Election Biennially, of three School Trustees, and for the Levying and Collection of a District School Tax, and Providing for the holding of Elections for such Purposes.

*Be it enacted by the Legislature of the State of Florida:*

Section 1. That an election may be held in any city, town, community, section or division of any county, under the order and direction of the board of public instruction of any county, upon the petition of one-fourth of the registered and qualified voters of such city, town, community, section or division of such county, who are tax payers on real or personal property therein, to determine whether such city, town, community, section or division of such county, shall be a school sub-district, and for the election of three trustees therefor, and to determine the mileage to be assessed and collected annually during the succeeding two years. Such election shall be held and the result ascertained and declared as nearly as practicable in the same manner as is provided by law for the holding of elections con-

cerning Article XIX of the Constitution, substituting the board of public instruction for the county commissioners. It shall require a majority of the votes of those voting at any such election, to determine any matter in the affirmative. At an election to decide whether such sub-district shall be formed three school trustees shall be elected to serve as such, should a majority of the electors vote for and create such sub-district, and on the same day biennially thereafter, and at each of such elections the mileage to be assessed and collected annually during the succeeding two years for school purposes in such sub-district, shall be determined by a majority vote of the qualified electors as herein provided. Notice of holding any such election to determine whether such city, town, community, section or other division of such county, shall be made a school sub-district, or for the election of school trustees, shall be made by the board of public instruction, by publishing a notice in a newspaper published in such city, town, community, section or other division of such county to be made a school sub-district, for four consecutive weeks, *Provided*, That the cost of such publication shall be paid by the sub-school districts, respectively, or by posting such notice in three public places, within the limits of such city, town, community, section or other division to be made a sub-district, for thirty days prior thereto.

Section 2. All voters in such election for sub-districts or trustees shall have the qualifications specified in section one for petitioners for election to establish sub-districts.

Section 3. The petition mentioned in section one of this act shall fix and define the boundary of the city, town and adjacent territory, community, section or other division intended to be made and formed into a

school sub-district, which boundary shall include but one public school, except in incorporated towns.

Section 4.    It shall be the duty of the trustees on or before the last Monday in July of each year to prepare an itemized estimate, showing the amount of money required, for necessary common school purpose of their sub-district for the next ensuing scholastic year, stating the rate of mileage to be assessed and collected upon the taxable property of their sub-district to cover such amount, not to exceed three mills on the dollar. A copy of the itemized estimate herein provided for shall be filed with the clerk of the board of county commissioners, which board shall direct the assessor of taxes to assess, and the collector to collect, the amount so stated. Moneys collected under the provisions of this act shall be paid over to the trustees of the sub-district in which the tax is levied.

Section 5.    The object of a school sub-district shall be to promote the school interests of the district, when formed, by the collection and judicious appropriation of a special school tax.

Section 6.    They shall also be a corporation with the usual powers for the purpose of performing their duties.

Section 7.    They shall receive and hold the money which may be assessed and collected as hereinbefore provided as a special tax, to be disbursed in the district where collected, solely for school purposes. These trustees shall be required to give bond in twice the amount raised by the special tax to be approved by the board of public instruction before receiving any such money.

Section 8.    All laws and parts of laws in conflict

herewith are hereby repealed. This act shall take effect upon its approval by the Governor.

Approved May 20, 1895.

It will be observed that this act undertakes to determine the result of the elections to be held under it by the majority of the votes *actually cast* at any such election. In this I think that it clearly violates the plain letter, meaning and spirit of the quoted section of the organic law. The language used in the constitution is plain and explicit, and in my view, admits of no other construction than that in order to impose the additional burden of taxation contemplated thereby, a majority of the qualified electors of the district to be taxed, who pay taxes on real or personal property, *must have voted* at such election, and must have voted in favor of the affirmative of the proposition. I think that the cases cited in the opinion of the majority of the court from the States of North Carolina, Mississippi and Missouri were rightly decided upon this question, but the peculiar language of our constitution, I think, plainly forbids any other construction. What is that language? That such tax may be imposed "whenever a majority of the qualified electors thereof that pay a tax on real or personal property *shall vote* in favor of such tax." To what does the word *"majority"* in the quoted sentence grammatically refer, and what subject in said sentence does the word *"majority"* therein qualify? Clearly it refers to and qualifies the words *"qualified electors thereof."* The term "qualified elector" can be and is properly and accurately applied to the citizen who is qualified to vote though he may never in fact become a *voter* by actually casting a ballot. And our

constitution in express terms so declares in its definition of the term *"qualified elector,"* found in section one of Article VI of that instrument as follows: "Every male person of the age of twenty-one years and upwards, that shall, at the time of registration, be a citizen of the United States, and that shall have resided and had his habitation, domicile, home and place of permanent abode in Florida for one year and in the county for six months, shall in such county be deemed a qualified elector at all elections under this constitution." Here we have a constitutional definition of the term *"qualified elector,"* that does not require actual participation in any election to make it fully describe the subject of such definition. Then when the school-tax section under consideration, of the same instrument, uses the term *"qualified elector,"* it uses it in the sense of the definition expressly given to it by that instrument—that is, in the sense of persons having the requisite qualifications for voting, and not in the sense of their being actual voters, and in express terms says that in order to impose the additional tax a majority of the persons thus defined as *qualified electors,* who possess the additional qualification of being taxpayers, *shall vote* in favor of its imposition. I feel confidently strengthened in this view from the fact that in every provision of the constitution where elections are provided for and it was designed that the majority of the votes *actually cast* thereat should determine its result, that instrument has been couched in language clearly expressive of such design. Thus, section 8, of Article XVI in providing for the ascertainment of the result in elections of all officers, declares that "a plurality of *votes given* at an election of officers shall constitute a choice when not otherwise provided by this constitution." And section one of Art-

icle XVII in providing  for the ascertainment of the
result of elections on amendments to the constitution
declares that "if a majority of the electors voting upon
the amendments at such election shall adopt the amend-
ments the same shall become a part of the constitution."
And again in section two of the last mentioned Article
the provision for the ascertainment of the result of an
election for entire revision of the constitution, is: "If
a majority of the electors so voting be in favor of revi-
sion," etc. And again, in section one of Article XIX,
the result of an election to decide whether the sale of
liquors shall be prohibited, is "to be determined by a
majority vote of those voting at the election," etc. And
again section one of Ordinance No. 1 for the submis-
sion of said constitution of 1885 to an  election of the
people for ratification or rejection provides that "it
shall require a majority of the votes cast upon the
question to  determine its ratification or rejection."
And again Ordinance No. 2 of the same instrument,
making provision for the submission separately of the
local option Article XIX to a vote of the people, pro-
vides that it shall become a part of the constitution "if
adopted by a majority of the votes cast upon the ques-
tion." Is it not unaccountably strange that this instru-
ment in all these instances should have been so careful
to express the fact that the results of all such elections
should be determined by a *"majority of the votes cast,"*
except in the one case of the election to impose an ad-
ditional local tax for school purposes, and in that ex-
ceptional case should have used the language "when-
ever a majority of the *qualified electors* thereof *shall vote*
in favor of such levy," and yet mean the same thing as
in the other carefully worded instances? In my view

the clear purpose and intention of the constitution by this provision was to have this additional burden of taxation imposed, for an already liberally provided subject, only when a majority of the qualified taxpaying electors of the district to be taxed affirmatively gave their consent to such taxation, and that forty-five per cent. of the electors of any given district might attend such an election and unanimously vote in favor of the imposition of the tax, yet it could not be imposed because it had not received a majority of those whose affirmative consent was necessary to its imposition. In this view it would follow that no statute law can effectually put in motion this provision of the constitution that does not provide: (1) for the definite ascertainment in the particular district to be taxed of the number and names of the qualified electors therein, and (2) for the definite ascertainment of the names and numbers of those of such qualified electors that are possessed of the further qualifications of being taxpayers, then if a majority of these shall affirmatively give their consent to the tax by actually voting in favor thereof it can be imposed, but not otherwise. In my view the majority of the people to be taxed can effectually defeat its imposition by simply abstaining from voting at all upon the question. In order to definitely ascertain who are the persons in any given district that have a voice in the matter it is necessary also, as a condition precedent to any submission of the question, that the district itself or territory to be affected, should be definitely fixed and established by clearly defined metes and bounds, segregating it from adjacent territory. And in my view the section of the constitution under discussion clearly contemplates that such segregation and defining of the dis-

trict shall *precede* any proposition to tax such district; otherwise how can any definite discrimination be made as to who have and who have not a voice in the matter to be submitted. But again, the constitution expressly contemplates that the question to be submitted to the electors for their approval or rejection is: "Shall a district school tax for the exculsive use of public free schools within the district be levied?" That is, shall any such tax be levied, not what shall be its *amount* or *rate*, and yet nowhere in Chapter 4336 under which this election was held, is there any provision for the submission to a vote of the vital question; "shall any such tax be or be not levied?" It provides for the submission of the question as to whether the district shall be established or not, and for the election of three trustees therefor, "and to determine the *mileage* to be assessed and collected annually for two years," but it fails utterly to provide for the submission to a vote of the main question, shall there or shall there not be a special tax levied. It unauthorizedly takes it for granted that some such tax is to be levied *nolens volens* the electors of the district, and gives them a voice only in the rate or amount thereof, if the word *"mileage"* used in the statute can properly be applied to the question of taxation, or even if it be read to mean "millage" or rate.

I think that the said Chapter 4336 is unconstitutional and void, but even if it be conceded that it is not, I think that it is so wholly defective within itself as that under it the provisions of the constitution designed to be executed thereby can not legally be accomplished.